UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**Precision Turf, LLC,**

    **Plaintiff,**

v.                        CIVIL ACTION NO.:

**Orlando Sports Holdings, LLC,**

    **Defendant.**

_____/

## COMPLAINT

COMES NOW Plaintiff, Precision Turf, LLC, and files this, its Complaint for Damages, against Defendant Orlando Sports Holdings, LLC, respectfully showing this Court as follows:

## GENERAL ALLEGATIONS

1. Plaintiff Precision Turf, LLC ("Precision"), is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business located in Buford, Georgia.

2. Defendant Orlando Sports Holdings, LLC ("Orlando Soccer"), is a limited liability company organized and existing under the laws of the State of Delaware, with a principal office address located in Orlando, Florida.

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

4. Precision specializes in the installation and maintenance of athletic fields, including new field design and construction, field renovations, and turf care and maintenance.

5. Precision has designed, installed, and maintained athletic fields for high schools, colleges, and professional sports teams across the United States.

6. Orlando Soccer owns and operates the Orlando City Soccer Club, a Major League Soccer franchise in Orlando.

7. In 2019, Orlando Soccer contracted with Precision for the conversion of certain baseball fields into soccer training fields (the "Project").

8. The Contract included a Schedule of Values and a schedule for the payment of draws.

9. Precision has at all relevant times complied with all of its applicable and relevant obligations under the Contract.

10. Orlando Soccer required, contrary to Precision's customary practice and preference, the use of wire transfers to transmit payments.

11. To facilitate this process, Orlando Soccer's Senior Accountant, Matt Pomponio, requested Precision's bank wiring information.

12. Precision provided the information directly to Mr. Pomponio.

13. For each draw, Precision was required to present a payment application to Orlando Soccer's Training Facility Operations Manager, Danny Quesada.

14. Mr. Quesada would review the pay application and, upon approval, forward the application to Orlando Soccer's accounting department for processing.

15. Precision never provided its banking information to Danny Quesada.

16. Precision began work on the Project in early 2019.

17. Consistent with the Contract, Precision submitted its first two draws, which were approved, and received payment via wire transfer.

18. Precision submitted its third draw to Mr. Quesada, in the amount of $191,012.40, on July 2, 2019.

19. The draw was approved by Orlando Soccer.

20. Precision never received payment for the third draw.

21. Upon investigation, Precision discovered that Orlando Soccer wired the $191,012.40 to an entirely different bank account that is not owned or controlled by Precision.

22. Based upon information provided by Orlando Soccer, Precision discovered that Mr. Quesada had, upon receiving email requests from a non-party hacker to send the payment to an entirely different bank account in the name of "Stephenzack Services, Inc.", changed the account information and attempted to make the wire transfer.

23. The first wire transfer attempt failed.

24. Orlando Soccer then emailed directly with the entity that requested the account change, which entity provided a dubious excuse for the failed wire transfer, and requested that Orlando Soccer again attempt the wire transfer.

25. Orlando Soccer's second attempt was successful, and the monies were transferred to an account unaffiliated with Precision.

26. Orlando Soccer never called Precision to verify that Precision actually desired an account change.

27. Mr. Quesada never sought confirmation of the account change with Precision or, upon information and belief, Mr. Pomponio.

28. Orlando Soccer took no steps to confirm or verify that the new account was an account associated with Precision.

29. Precision has made demand upon Orlando Soccer to make payment of the outstanding contract amount to Precision.

30. Orlando Soccer has failed and refused to make payment of the final draw to Precision.

31. All conditions precedent to the maintenance of this action have been performed, have occurred or have otherwise been waived.

## COUNT 1
(Breach of Contract)

32. Plaintiff incorporates herein the allegations of Paragraphs 4 through 31 as if fully restated herein verbatim.

33. Orlando Soccer agreed to pay Precision for the work performed on the Project.

34. Precision submitted payment applications for work undisputedly performed.

35. Orlando Soccer, by engaging in the conduct described in this Complaint and by engaging in conduct contrary to the terms of the Contract, breached its contract with Precision.

36. As a direct and proximate result, Precision has incurred damages in the amount of $191,012.40, and in such other amounts to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $191,012.40, plus interest and costs; and grant such other and further relief as the Court deems proper.

## COUNT 2
(Breach of Covenant of Good Faith and Fair Dealing)

37. Plaintiff incorporates herein the allegations of Paragraphs 4 through 31 as if fully restated herein verbatim.

38. When Precision and Orlando Soccer entered into the Contract, Precision agreed to provide the labor, materials, and services necessary to perform the Project, and Orlando Soccer agreed to pay Precision for the completion of the Project.

39. Implied in this Contract and Orlando Soccer's payment obligation therein was a covenant of good faith and fair dealing.

40. Orlando Soccer breached the covenant of good faith and fair dealing by engaging in incompetent acts without regard to proper verification protocols which caused the third draw to be diverted elsewhere and not to Precision.

41. Orlando Soccer's conduct was not consistent with Precision's reasonable expectations under the Contract and Orlando Soccer's payment obligation therein.

42. As a direct and proximate result, Precision has incurred damages in the amount of $191,012.40, and in such other amounts to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $191,012.40, plus interest and costs; and grant such other and further relief as the Court deems proper.

### COUNT 3
(Common Law Negligence)

43. Plaintiff incorporates herein the allegations of Paragraphs 4 through 31 as if fully restated herein verbatim.

44. Orlando Soccer owed the following duties to Plaintiff:

   a. The duty to exercise reasonable care in connection with, and to further inquire with Plaintiff about, the authenticity of the aforementioned account change request;

   b. The duty to exercise reasonable care in handling Plaintiff's bank account information;

  c. The duty to exercise reasonable care in attending to Plaintiff's payment matters; and

  d. The duty to exercise reasonable care in connection with paying Plaintiff including paying Plaintiff the aforementioned third and final draw, and not wiring such payment to an entirely different bank account that is not owned or controlled by Precision.

45. Orlando Soccer, by and through its agents and employees, failed to use reasonable care and was negligent in the following particulars to wit:

  a. In failing to exercise reasonable care in connection with, and failing to further inquire with Plaintiff about, the authenticity of the account change request;

  b. In failing to exercise reasonable care in handling Plaintiff's bank account information;

  c. In failing to exercise reasonable care in attending to Plaintiff's payment matters; and

  d. In failing to exercise reasonable care in connection with paying Plaintiff including paying Plaintiff the aforementioned third and final draw, and by wiring the $191,012.40 to an entirely different bank account that is not owned or controlled by Precision.

46. As a direct and proximate result of the aforementioned acts of negligence by Defendant, Plaintiff has suffered financial burden and loss.

47. Plaintiff seeks an award of actual damages and any other relief that this Court may deem just and proper.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $191,012.40, plus interest and costs; and grant such other and further relief as the Court deems proper.

## COUNT 4
(Unjust Enrichment)

48. Plaintiff incorporates herein the allegations of Paragraphs 4 through 31 as if fully restated herein verbatim.

49. Plaintiff conferred a benefit upon Defendant by providing the aforementioned work for Defendant.

50. Defendant appreciate the benefit conferred.

51. Defendant accepted and retained the benefit under circumstances that make it inequitable for it to retain it without paying the value thereof.

52. Defendant owes Plaintiff the sum of $191,012.40, exclusive of costs, interest and other amounts due.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in the amount of $191,012.40, plus interest and costs; and grant such other and further relief as the Court deems proper.

KILLGORE, PEARLMAN, SEMANIE,
  DENIUS & SQUIRES, P.A.
800 North Magnolia Avenue, Suite 1500
Orlando, Florida 32803
Telephone:  (407) 425-1020
Facsimile:  (407) 839-3635
 /s/ William J. Denius
William J. Denius, Esq.
Florida Bar No. 0093637
Counsel for Plaintiff
wjdenius@kpsds.com
mferreira@kpsds.com